# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**LEENA SHAH,**                          CASE NO. 3:21 CV 581

    Plaintiff,

    v.                                   JUDGE JAMES R. KNEPP II

**UNIVERSITY OF TOLEDO, et al.,**

    Defendants.                      **MEMORANDUM OPINION AND
ORDER**


### INTRODUCTION

In this matter, Plaintiff Leena Shah asserts Defendants the University of Toledo ("UT"), Christopher Cooper, Deepa Mukundan, and Randall G. Worth discriminated against her based on her race and national origin and violated her procedural due process rights when they dismissed her from UT's M.D. program. (Doc. 1). Jurisdiction is proper under 28 U.S.C. § 1331.

Currently pending before the Court is Defendants' Motion to Dismiss (Doc. 9), which Plaintiff opposes (Doc. 10), and to which Defendants have replied (Doc. 11). For the reasons discussed below, the Court grants Defendants' motion in its entirety.

### BACKGROUND

Below are the facts of this case, taken from the Complaint, which must be taken as true for purposes of the present motion.

Plaintiff, who is of Kashmiri descent, was a student at UT's College and Medicine and Life Sciences M.D. program (hereinafter, "the program") from July 31, 2016 through her dismissal on November 5, 2019. (Doc. 1, at ¶ 6). Defendants Worth (an Associate Dean for Student Affairs and Admissions) and Mukundan (Assistant Dean of Academic Affairs) were two

of Plaintiff's advisors. *Id.* at ¶ 8-9. Defendant Cooper is Dean of the College of Medicine and Life Sciences and Executive Vice President for Clinical Affairs. *Id.* at ¶ 22.

Exam Preparation / Leaves of Absence

During her enrollment, Plaintiff successfully completed the preclinical curriculum requirements "with the exception of not taking the USMLE (United States Medical Licensing Examination) Step One." *Id.* at ¶ 7.

Under program policy entitled "Medical student, grading, academic promotion, re-examination, remediation, dismissal, due process, & appeals":

> A Student who does not take or pass Step 1 and makes a decision, with proper approval and advisement from the Office of Student Affairs, to delay the start of clinical clerkship, must work with the Office of Student Affairs and Department of Medical Education to develop a program of accountability and progress towards Step 1 preparation. A plan of action must include a planned timeline for completion of Step 1 and milestone markers for continued follow-up (return and report) to gauge readiness and assess if further intervention is required to provide meaningful academic support and positive progress.

*Id.* at ¶ 12.

Plaintiff took an approved leave of absence from August 17, 2018 through April 15, 2019 to prepare for the USMLE Step 1 (hereinafter, "the exam"). *Id.* at ¶¶ 11, 13. She had monthly meetings from July 2018 to January 2019 with Mukundan. *See id.* at ¶ 10. Plaintiff says Mukundan offered little feedback or help at these meetings despite her requests for guidance; instead, Mukundan "focused on [Plaintiff] as a person, asserting that [Plaintiff] had character traits such as being argumentative and anxious" and "aggressively demand[ed]" Plaintiff schedule the exam regardless of her preparedness. *Id.*

Plaintiff requested and received a leave of absence extension through August 17, 2019 to have more exam preparation time. *Id.* at ¶ 14-15. Her anticipated exam date was on or before June 10, 2019, but this was later moved to July 31, 2019. *Id.* at ¶ 15.

2

In a May 1, 2019 email, Worth told Plaintiff her graduation would be delayed if she did not take the exam by June 7, 2019. *Id.* at ¶ 16; Doc. 1-1, at 1 (email).

On June 10, 2019, Plaintiff requested her leave of absence from the program be extended from August 17, 2019 through April 13, 2020 to prepare for the exam and do research. (Doc. 1, at ¶ 17). UT neither granted nor denied this request. *Id.*

Dismissal and Appeal

According to Plaintiff, the program "has a policy that allows for due process prior to a dismissal decision being made", which includes a hearing before the Student Promotions Committee and/or the Medical Student Conduct and Ethics Committee. *Id.* at ¶ 19.

Worth planned to refer Plaintiff's case to the Student Promotions Committee, but later decided not to. *Id.* at ¶ 20. On July 18, Worth told Plaintiff by email he noticed she was no longer scheduled to take the exam the following day and asked for an update; the email concluded "[i]f not, I will forward your academic file to the student promotions committee for their review." (Doc. 1-2, at 1). Plaintiff responded that she was not adequately prepared for the examination, and Worth responded he would forward her file. *Id.* September 2019 emails indicate Worth again said he would send her file, but then reversed course. *See* Doc. 1-3, at 1-2.

On September 30, 2019, Plaintiff was involuntarily dismissed from the program; Worth informed Plaintiff of this decision. (Doc. 1, at ¶ 18). Plaintiff was not provided an opportunity to be heard by the Student Promotions Committee or the Medical Student Conduct and Ethics Committee prior to dismissal. *Id.* at ¶ 19.

Plaintiff filed a timely appeal of this decision on October 13, 2019. *Id.* at ¶ 22. Cooper informed Plaintiff a faculty committee empaneled to hear her appeal would contact her, but she was never contacted. *Id.* at ¶ 23.

3

On November 1, 2019, Cooper requested a meeting with Plaintiff and Worth to consider his decision; Plaintiff requested Worth not attend. *Id.* at ¶ 24. Plaintiff and Cooper met four days later at which time Cooper informed Plaintiff he had spoken with Mukundan who "told Cooper that [Plaintiff] was not making progress in her preparation for the . . . exam." *Id.* at ¶ 25. Cooper ultimately upheld Plaintiff's dismissal on November 5, 2019. *Id.* at ¶ 22.

Other Students

Plaintiff asserts a Caucasian student "who was on a leave of absence preparing for the . . . exam" was permitted to withdraw in lieu of dismissal from the program. *Id.* at ¶ 21.

She further asserts Cooper conditionally reinstated a Caucasian student in 2015 who was previously dismissed for failing to pass the USMLE Step 1 within a calendar year. *Id.* at ¶ 26. That student ultimately did not take the exam by the deadline upon which reinstatement was conditioned; however, the dismissal was changed to a withdrawal. *Id.*

Dismissal from the program "is a more serious sanction than withdrawal" because with a withdrawal the student is eligible for readmission to the program, or to apply to another school's medical program. *Id.* at ¶ 21. Plaintiff says she was denied the benefit of a policy permitting withdrawal from the program in a situation where a leave of absence is not continued. *Id.*

Plaintiff asserts these actions constitute race and national origin discrimination under Title VI, 42 U.S.C. § 2000d, et seq., and a procedural due process violation under 42 U.S.C. § 1983. She seeks injunctive relief – including reinstatement – and monetary damages.

### STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the Court tests the complaint's legal sufficiency. "In determining whether to grant a Rule 12(b)(6) motion, the [C]ourt primarily considers the allegations in the complaint, although matters of public record,

orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). The Court is required to accept the allegations stated in the complaint as true, while viewing the complaint in a light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that "[a]lthough for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation").

Although a complaint need not contain "detailed factual allegations," it requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

## DISCUSSION

Defendants argue Plaintiff's Complaint must be dismissed in its entirety. Specifically, UT first contends the Complaint fails to state a Title VI discrimination claim because the Complaint fails to plausibly allege (1) Plaintiff was qualified to continue in the program or UT treats similarly situated students more favorably; (2) that UT itself – rather than the individual Defendants – discriminated; and (3) any intentional discrimination.

5

Second, Defendants contend Plaintiff's due process claim must be dismissed because: (1) the Court lacks subject matter jurisdiction and the Eleventh Amendment bars Plaintiff's claims against UT and the individual Defendants in their official capacities; (2) the Complaint does not adequately allege the individual Defendants' actions violated Plaintiff's constitutional rights; and (3) the individual Defendants are entitled to qualified immunity.[1]

For the reasons discussed below, the Court grants Defendants' Motion to Dismiss.

Title VI Discrimination

UT first argues Plaintiff's discrimination claim must be dismissed. Specifically, it contends Plaintiff has not adequately alleged she was qualified to proceed in the program and similarly-situated non-protected students were treated differently (elements of a prima facie discrimination case). They further assert she has not adequately alleged facts to establish the discrimination was intentional or that UT itself – the only potentially liable entity – discriminated against her. The Court finds Defendants' final argument to be the determinative one.

Title VI of the Civil Rights Act of 1964 prohibits any "program or activity receiving Federal financial assistance" from discriminating "on the ground of race, color, or national origin." 42 U.S.C. § 2000d. It provides a private cause of action for injunctive relief and damages. *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001). However, there is no private right of action for disparate impact; Title VI prohibits only intentional discrimination. *Id.* at 280.

---

1. Defendants attached to their motion to dismiss the program's "Medical Student Grading, Promotion, Re-examination, Remediation, Dismissal, Due Process, & Appeals" policy. *See* Doc. 9-1. They assert this document can be considered at this stage because Plaintiff cites and quotes portions thereof in her Complaint and "to the extent that the COMLS Policy, in its entirety, rebuts or contradicts what [Plaintiff] alleges in her Complaint, it is because [Plaintiff] misconstrues the nature and full extent of the COMLS Policy in her Complaint." (Doc. 9, at 9 n.2). Plaintiff objects – asserting that "[n]owhere in the Complaint does Plaintiff allege that she was dismissed from the M.D. program pursuant to the policy." (Doc. 10, at 3). The Court finds it unnecessary to consider the policy to resolve the issues presented by the pending motion and therefore finds it unnecessary to reach this dispute.

Individual defendants cannot be sued under Title VI, only the entity receiving federal funds. *See Buchanan v. City of Bolivar*, 99 F.3d 1352, 1356 (6th Cir. 1996). Moreover, there is no vicarious liability under Title VI; the entity cannot be held liable for discrimination solely because it employs a discriminating employee. *Foster v. Michigan*, 573 F. App'x 377, 389 (6th Cir. 2014) (affirming dismissal of Title VI discrimination claims because "there is no vicarious liability under Title VI" and the complaint lacked "fact-based allegations that either MDOT or the State of Michigan participated in, or was aware of, or was deliberately indifferent to any discriminatory acts"). "[A]ctual notice of the alleged discrimination is an essential element of a deliberate indifference claim." *Doe v. Ohio State Univ.*, 323 F. Supp. 3d 962, 968 (S.D. Ohio 2018).

Therefore, to state a claim under Title VI, a plaintiff must allege something more than simply the actions of individuals. *Compare Thompson v. Ohio State Univ.*, 990 F. Supp. 2d 801, 817 (S.D. Ohio 2014) (allowing claim to proceed where "the allegations in the amended complaint do not establish that Plaintiff is trying to hold the University liable for the allegedly discriminatory actions of [its employees]" but "allege[d] that OSU was deliberately indifferent to Plaintiff's complaints of race discrimination by not only failing to properly investigate them but also by actively taking steps to cover up discrimination"), *with Mahdy v. Mason City Sch. Dist.*, 2018 WL 1327211, at *8 (S.D. Ohio) ("Count One of the Complaint seeks to hold the Mason School District liable for the alleged intentional discrimination of the four Individual School District Defendants when they are the only agents of the Mason School district that the Complaint alleges knew of the wrongful conduct. . . . Plaintiffs' attempt fails as a matter of law. The knowledge of the Individual School District Defendants—the alleged wrongdoers—cannot be attributed to the Mason School District, regardless of their official titles.").

7

Defendants contend Plaintiff's discrimination allegations are entirely based on the actions of the individual Defendants and Plaintiff fails to plead facts imputing knowledge of or deliberate indifference to those actions to UT – the only potentially liable entity under Title VI. Plaintiff responds that her claims are not based on vicarious liability – contending the Complaint's allegation that "UT, through its officials, engaged in intentional discrimination" is "different than claiming that UT is liable for the individual actions of" Cooper, Mukundan, and Worth. (Doc. 10, at 8). Plaintiff acknowledges that Title VI liability requires UT to have "actual notice" of the discriminatory actions, but contends "[u]ltimately discovery and the trial will untangle the lines of authority and supervisory authority of the officials involved, including but not necessarily limited to Cooper, Mukundan, and Worth." *Id.* at 9.

The Complaint, however, does not contain factual assertions that someone outside of the individual Defendants in this case had actual notice of and was deliberately indifferent to any racially discriminatory conduct. Plaintiff asserts Mukundan did not provide her appropriate support as an advisor, Worth advised Plaintiff of her dismissal from the program, and Cooper upheld that dismissal. The Complaint does not assert Plaintiff complained to anyone at UT that any of these actions were racially motivated. *See, e.g.*, *Goonewardena v. New York*, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) (dismissing plaintiffs Title VI claim where he "fail[ed] to allege that he reported any incidents of discrimination to [the defendant's] officials"); *Evans v. Columbia Univ.*, 2015 WL 1730097, at *3 (S.D.N.Y.) (to state a claim arising under Title VI, the plaintiff must "allege that the [defendant-entity] had notice of the complained-of discrimination"); *Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 533–34 (S.D.N.Y. 2013) ("Without a showing that Manolov's complaints to BMCC officials referenced

alleged racial or sexual discrimination, and not merely generic perceived teaching failures, the College cannot be charged with notice of an alleged violation of Title VI or IX.").

To the extent Plaintiff would contend Cooper, as Dean, had notice of the discrimination because he himself treated a Caucasian student differently, the Supreme Court has expressly rejected such a contention. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998) ("Where a school district's liability rests on actual notice principles, however, the knowledge of the wrongdoer himself is not pertinent to the analysis.").[2] Therefore, similar to *Mahdy*, "Count One of the Complaint seeks to hold [UT] liable for the alleged intentional discrimination of the [three] Individual . . . Defendants when they are the only agents of [UT] that the Complaint alleges knew of the wrongful conduct. Plaintiffs' attempt fails as a matter of law. The knowledge of the Individual . . . Defendants—the alleged wrongdoers—cannot be attributed to [UT], regardless of their official titles." 2018 WL 1327211, at *8.

In sum, because UT is the only potentially liable entity under Title VI and Plaintiff has failed to plead "fact-based allegations that" UT as an entity (rather than only the individual named Defendants) "participated in, or was aware of, or was deliberately indifferent to any discriminatory acts". *Foster*, 573 F. App'x at 389, Count One of her Complaint fails to state a claim, and Defendants' Motion to Dismiss is granted as to this claim.

Procedural Due Process

Next, Defendants contend Plaintiff's procedural due process claim must be dismissed for failure to state a claim upon which relief can be granted. They argue – as to the claims against UT and claims against the individual Defendants in their official capacities – that the Eleventh Amendment bars such claims, and Plaintiff has not adequately alleged a claim for injunctive

---

2. *Gebser* is a Title IX case; Title VI and Title IX are construed *in pari materia. See, e.g.*, *Shotz v. City of Plantation*, 344 F.3d 1161, 1170 n.12 (11th Cir. 2003).

relief under the *Ex Parte Young* exception. As to Plaintiff's claims against Defendants in their individual capacities, Defendants contend first, Plaintiff has not connected Mukundan to the alleged violation; second, Plaintiff has not plausibly alleged Worth or Cooper violated her procedural due process rights; and third, Worth and Cooper are entitled to qualified immunity.

To prevail on a Section 1983 claim, a plaintiff must prove that conduct by a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or other federal law. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). As employees of a state public educational institution, Mukundan, Worth, and Cooper are state actors. *See, e.g.*, *Tann v. Ludwikowski*, 393 F. App'x 51, 53 (4th Cir. 2010).

To state a claim for a procedural due process violation, a plaintiff must allege (1) she has a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) she was deprived of this protected interest within the meaning of the Due Process Clause; and (3) the school did not afford her adequate procedural rights prior to depriving her of that protected interest. *Gunasekera v. Irwin*, 551 F.3d 461, 467 (6th Cir. 2009). "[T]he inquiry is not whether the University conformed to its own internal grievance procedures, but rather if [the plaintiff] was afforded the due process guaranteed under the Fourteenth Amendment." *JiQiang Xu v. Michigan State Univ.*, 195 F. App'x 452, 457 (6th Cir. 2006); *see also Jaber v. Wayne State Univ. Bd. of Governors*, 487 F. App'x 995, 998 (6th Cir. 2012) ("the failure to follow a state law or procedure does not itself violate due process"). This is because "[a] state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995).

10

To prevail on a § 1983 claim for individual liability, a plaintiff must demonstrate "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. That is, a plaintiff must prove "that the violation was committed *personally* by the defendant." *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014).

At the outset, the Court preliminarily disposes of two less complex arguments. First, Defendants assert any claim against UT or any monetary claim against the individual Defendants in their official capacities must be dismissed because the Eleventh Amendment bars claims against a state, and official capacity damages claims against state officials are considered an action against the State itself and thus similarly barred. Defendants are correct. *See* U.S. Const. Amend. XI; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, n.10 (1989); *Boler v. Earley*, 865 F.3d 391 409-10 (6th Cir. 2017). They further contend any claim for injunctive relief against the individual Defendants in their official capacities fails to satisfy the *Ex Parte Young* exception because, *inter alia*, there is no constitutional violation. For the reasons discussed below, the Court agrees that Plaintiff has not plausibly pled a constitutional violation, and thus agrees.[3]

Second, Defendants assert Plaintiff has not alleged Mukundan played any role in the alleged procedural due process violation – dismissal from the program. Plaintiff did not specifically respond to this argument. *See* Doc. 10. Although the Complaint alleges Mukundan did not support Plaintiff in preparing for the exam, and "told Cooper that [Plaintiff] was not making progress" (Doc. 1, at ¶¶ 10, 25), it contains no fact-specific allegations Mukundan had any involvement in the decision to dismiss Plaintiff from the program, which is the actual basis for Plaintiff's procedural due process claim. Thus, the Court dismisses Plaintiff's procedural due

---

3. In her opposition brief, Plaintiff states, simply: "Plaintiff will concede that under the present state of the law, the University and the individual defendants in their official capacities are immune from suit and thus relief cannot be obtained against them." (Doc. 10, at 12). She presents no specific argument regarding the *Ex Parte Young* injunctive relief exception.

process claim against Mukundan in both her individual and official capacities, dismisses Plaintiff's procedural due process claims against UT, and her official capacity claim against Cooper and Worth.

This leaves Plaintiff's claims against Cooper and Worth in their individual capacities. Again, to state a procedural due process claim, plaintiff must identify (1) a life, liberty, or property interest; (2) a deprivation of that interest; and (3) inadequate procedural rights prior to the deprivation. *Gunasekera*, 551 F.3d at 467. Defendants contend Plaintiff's Compliant must be dismissed because she has not alleged the third element; they further assert they are entitled to qualified immunity.

The amount of process due[4] to a student prior to dismissal depends on whether such dismissal is for academic reasons or disciplinary reasons. *Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281, 297 (6th Cir. 2019) ("The Supreme Court has recognized a critical distinction between dismissals for disciplinary misconduct and dismissals for academic underperformance.") (comparing *Goss v. Lopez*, 419 U.S. 565 (1975) *with Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78 (1978)). "When a school imposes a serious sanction like dismissal to address a student's disciplinary misconduct, the student is entitled to more robust process, including a hearing to 'present his side of the story.'" *Id.* (quoting *Goss*, 419 U.S. at 581). To the contrary, if a dismissal is for academic reasons, "[t]he university must provide the student with notice of his unsatisfactory academic performance and deliver a 'careful and deliberate' decision on the student's fate"; "But the university need not provide a hearing." *Id.* (quoting *Ku v. Tennessee*, 322 F.3d 431, 436 (6th Cir. 2003) (citing *Horowitz*, 435 U.S. at 85-86)). This is so

---

4. Most courts examining the issue in the academic setting assume there is a constitutionally-protectable interest and look to whether the process provided was adequate. *See, e.g.*, *Mbawe v. Ferris State Univ.*, 751 F. App'x 832, 841 (6th Cir. 2018).

because "measuring a student's academic performance 'by its nature [is] more subjective and evaluative than the typical factual questions presented in the average disciplinary decision' and often requires 'an expert evaluation of cumulative information.'" *Id.* (quoting *Horowitz*, 435 U.S. at 91). Educators making academic dismissal decisions "exercise their 'historic judgment' *as educators* to evaluate the student, and their decision is entitled to substantial deference." *Id.* (quoting *Horowitz*, 435 U.S. at 90); *see also Hlavacek v. Boyle*, 665 F.3d 823, 826 (7th Cir. 2011) ("It would be difficult to imagine a different standard: how could federal judges second-guess the judgment of the dental faculty (or the engineering faculty, or the art history faculty, for that matter) on the question of academic competence?"). "The upshot for students facing dismissal on academic grounds is that the due process afforded is minimal." *Endres*, 938 F.3d at 298 (internal citation and quotation omitted).

Despite Plaintiff's argument that "it is not clear what the basis of the discharge was in terms of it being academic or disciplinary" (Doc. 10, at 10), her Complaint can only be read to assert an academic dismissal.

An academic dismissal is one that involves a school's consideration of a student's personal attributes requiring the "expert evaluation[] . . . and historic judgment of educators", and bear "little resemblance to . . . judicial and administrative fact-finding proceedings." 435 U.S. at 89-90. For this reason, "[w]hen judges are asked to review the substance of a genuinely academic decision . . . they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985) (citations and footnotes omitted). An academic dismissal is one based on "a student's scholarship or conduct reflect[ing] on the personal qualities necessary to succeed in the field in

which he or she is studying and is based on at least partially subjective appraisal of those qualities." *Allahverdi v. Regents of the Univ. of New Mexico*, 2006 WL 1313807, at *13 (D.N.M.) (surveying cases); *see also Stevenson v. Owens State Cmty. Coll.*, 562 F. Supp. 2d 965, 971 (N.D. Ohio 2008) (dismissal is "academic in nature if there is a nexus between the . . . conduct and the prospects of success in a student's field of study.").

By contrast, a disciplinary dismissal involves "the violation by a student of valid rules of conduct" or "disruptive and insubordinate behavior". *Horowitz*, 435 U.S. at 86, 90.

The Complaint contains no allegations that Plaintiff was dismissed from the program for behavior or the violation of any rule of conduct. Rather, Plaintiff asserts Defendant repeatedly requested (Doc. 1, at ¶¶ 10, 16) she take an examination she felt unprepared for, but that she acknowledges was a required part of the preclinical curriculum (Doc. 1, at ¶ 7), and she was subsequently dismissed after failing to do so. During her meeting with Cooper regarding her appeal, Cooper told her he spoke with Mukundan who told him "[Plaintiff] was not making progress in her preparation for the . . . exam." *Id.* at ¶ 25. Indeed, Plaintiff requests by way of relief, *inter alia*, "[r]emoval and expungement by UT of the *academic dismissal* and related documents from all its records and files". (Doc. 1, at 9, 10) (emphasis added). Therefore, the Court finds the facts alleged can only be read to assert Plaintiff's dismissal was academic; to satisfy the Fourteenth Amendment, she was thus was entitled to "notice of her unsatisfactory academic performance" and a "careful and deliberate" decision. *Endres*, 938 F.3d at 297; *Horowitz*, 435 U.S. at 85.

Plaintiff's does not assert she lacked notice of her unsatisfactory academic performance. The Complaint, in fact, acknowledges Plaintiff had not completed all academic requirements. *See* Doc. 1, at ¶ 7 ("During her time as a student in the UT M.D. program, [Plaintiff] successfully

14

completed the preclinical curriculum *with the exception of* not taking [the exam].") (emphasis added). Plaintiff asserts she was repeatedly instructed and encouraged to take the exam, and told that failure to take the examination by June or July 2019 would impact her ability to continue in the program. *See id.* at ¶ 15 ("[Plaintiff's] extended leave of absence which began on April 15, 2019 was approved for the period April 15, 2019 through August 17, 2019, with an anticipated USMLE Step 1 test date of on or before June 10, 2019. The anticipated USMLE Step 1 test date was later moved to July 31, 2019."); Doc. 1, at ¶ 16 ("In May 2019 Worth informed [Plaintiff] that if she did not take the USMLE Step 1 by June 7, 2019, her graduation would be delayed. In his email to Shah dated May 1, 2019, Worth stated the following: 'As I stated earlier, as long as you take Step 1 by June 7, you can begin clerkship on June 10. If you wait any longer, you should simply take a year off because you won't be able to graduate on time.'"); *see also* Doc. 1-1 (emails). Plaintiff did not take the exam after these instructions, but on June 10, requested an additional leave of absence. *Id.* at ¶ 17. On July 18, Plaintiff told Worth by email that she was not prepared to take the examination the following day, and Worth responded he would forward her file "to be reviewed by the student promotions committee." (Doc. 1-2, at 1). Taking Plaintiff's allegations as true, therefore, the Court finds Plaintiff has not plausibly alleged lack of notice of unsatisfactory academic performance.

Next, Plaintiff asserts "Defendants acted arbitrarily and capriciously in dismissing [Plaintiff], or participating in the dismissal of [Plaintiff], from the . . . program without a hearing before the Student Promotions Committee and/or the Medical Student Conduct And Ethics Committee." (Doc. 1, at ¶ 37).[5] Her opposition brief further focuses largely on the failure to provide a hearing before the Student Promotions Committee and on Worth's failure to follow

---

5. Although described as "[a]n example" of the denial of procedural due process, this is the only procedural due process violation alleged in the Complaint. *See* Doc. 1, at ¶ 37.

through on his intent to follow that process. (Doc. 10, at 10-11). But, as set forth above, for an academic dismissal, a hearing is not required. *Endres*, 938 F.3d at 297; *Horowitz*, 435 U.S. at 85-86. And whether UT followed its own policy for a hearing does not change this constitutional procedural due process analysis. *JiQiang Xu*, 195 F. App'x at 457; *see also Worcester v. Stark State Coll.*, 2019 WL 3006429, at *3 (N.D. Ohio) ("[E]ven assuming for the sake of argument that SSC violated its own policies or procedures, that 'does not in and of itself implicate constitutional due process concerns.'") (quoting *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996)).

Rather than allege a violation of University policy, Plaintiff must allege the decision to dismiss her did not meet the "careful and deliberate" standard established by *Horowitz*. Defendants contend she has not done so, citing: (1) the five month gap between when Plaintiff last indicated she was not ready to take the exam and her final dismissal; and (2) Plaintiff's opportunity to appeal her dismissal to Cooper, the Dean of the program. Plaintiff – in her opposition brief – does not expressly respond to this argument. Rather, she (1) broadly contends the Complaint "show[s] a complete abrogation of [her] right to due process of law before her medical career was destroyed by Drs. Worth and Cooper"; (2) as noted above, asserts "it is not clear" whether her dismissal was academic or disciplinary; then (3) repeats the allegations of her Complaint – including UT's failure to respond to her June 2019 request for further leave, Worth's seeming change of mind about sending Plaintiff's case to the Student Promotions Committee, and UT's general failure to provide a hearing. (Doc. 10, at 10-13).

The Court finds Plaintiff has not plausibly alleged the decision to dismiss her was not "careful and deliberate" as that term applies to academic dismissals. Here, by Plaintiff's own allegations, she "submitted an internal appeal of her dismissal" and met with Cooper, the Dean,

about that appeal; Cooper ultimately upheld Plaintiff's dismissal after their meeting wherein Cooper told her "he had spoken with Mukundan regarding [Plaintiff] and that Mukundan had told Cooper that [Plaintiff] was not making progress in her preparation for the USMLE Step 1 exam." (Doc. 1, at ¶¶ 22, 24-25).[6] *See Yoder*, 526 F. App'x at 551 ("Although a post-dismissal appeal hearing was not constitutionally required, Yoder availed herself of the University appeal process, where her dismissal was affirmed by the Committee."); *Rogers v. Tenn. Bd. of Regents*, 273 F. App'x 458, 463 (6th Cir. 2008) (decision to dismiss a nursing student was "careful and deliberate" when student permitted to appeal ); *Worcester*, 2019 WL 3006429, at *4 ("No post-dismissal hearing was constitutionally required; even so, Worcester was given the opportunity to discuss her situation with the Dean and the Provost."). As the Third Circuit explained, "[w]hen a student is discharged for academic, as opposed to disciplinary, reasons, all that is required to satisfy procedural due process is 'an informal faculty evaluation with the student.'" *Kadakia v. Rutgers*, 633 F. App'x 83, 88 (3d Cir. 2015) (quoting *Mauriello v. Univ. of Medicine & Dentistry*, 781 F.2d 46, 51 (3d Cir. 1986)). Taking all the facts alleged in Plaintiff's Complaint as true, her allegations show she has received the process guaranteed by the Fourteenth Amendment.

Plaintiff has certainly alleged facts establishing Worth and Cooper intended or indicated, at different points, for Plaintiff's case to be heard by the Student Promotions Committee (Doc. 1, at ¶ 20; Doc. 1-2, at 1; Doc. 1-3, at 2) or a faculty committee empaneled to hear the appeal of her

---

6. In her opposition, Plaintiff argues that before her meeting with Cooper, Cooper "had met with Dr. Mukundan but apparently not Dr. Worth." (Doc. 10, at 12). She contends therefore Cooper could not have known the basis for Worth's decision to dismiss her from the program and therefore could not review it. *See id.* But as Defendants point out, this statement is not supported by the Complaint's assertions. *See* Doc. 1, at ¶¶ 22-25. The Complaint states only that Cooper told Plaintiff he had spoken to Mukundan (but does not assert he told her he did not speak to Worth), and asserts Plaintiff asked Cooper that Worth not attend their meeting. *See id.*

dismissal (Doc. 1, at ¶ 23), and that they did not follow through and neither hearing occurred. But these facts do not make out a *constitutional* due process violation because a dismissal for academic reasons does not require a hearing, and a violation of internal University procedure does not equate to a violation of constitutional magnitude. Taking as true all of Plaintiff's allegations in her complaint, the Court finds she has not plausibly alleged a procedural due process violation in connection with her academic dismissal from the program.

Qualified Immunity

Defendants further assert entitlement to qualified immunity on Plaintiff's procedural due process claim. Although reaching this argument is not necessary in light of the Court's conclusion above, the Court addresses this argument in the alternative. That is, for purposes of this section the Court assumes, *arguendo*, Plaintiff has pled a constitutional violation.

The defense of qualified immunity shields government officials performing discretionary functions where their "conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This defense "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). However, although the Sixth Circuit has explained that "insubstantial claims against government officials should be resolved as early in the litigation as possible, preferably prior to discovery," *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015), it has also "cautioned that 'it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity.'" *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)). "Although an [official's] entitlement to qualified immunity is a threshold question to be resolved at the earliest possible

18

point, that point is usually summary judgment and not dismissal under Rule 12." *Wesley*, 779 F.3d at 433-34 (internal marks and citations omitted). Nonetheless, dismissal based on qualified immunity at the pleadings stage may be appropriate under certain circumstances. *See Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017); *see also Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005) ("Despite liberal notice pleading standards, this circuit permits a reviewing court to dismiss under Fed. R. Civ. P. 12(b)(6) based on qualified immunity."); *see also Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016) ("Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the defendant is entitled to a meritorious affirmative defense such as qualified immunity."); *Duren v. Byrd*, 2021 WL 3848105, at *9 (M.D. Tenn.) ("[I]n noting that the defense of qualified immunity is prone to rejection when asserted as a 12(b)(6) or 12(c) motion, the Sixth Circuit makes clear that the defense *indeed can* be asserted in that manner.") (emphasis added); *Endres*, 938 F.3d at 302 (upholding dismissal of § 1983 claims on qualified immunity grounds).

The two-part test for qualified immunity asks (1) whether the facts that a plaintiff has alleged amount to a violation of a constitutional right; and (2) if so, whether the right at issue was clearly established at the time of the defendants' alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232–33 (2009). As noted, the Court assumes *arguendo* Plaintiff has pled a constitutional violation. At the second step, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Id.* at 202. "When the qualified immunity defense is raised at the pleading stage, the court must determine only whether the complaint adequately alleges the commission of acts that violated clearly established law."

*Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) ((internal quotation marks omitted).

Once a defendant properly raises a defense of qualified immunity, the burden shifts to plaintiff to demonstrate the defendant is not entitled to qualified immunity. *Livermore ex rel. Rohn v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). The bald assertion of qualified immunity is not sufficient to shift the burden, however. "A defendant bears the initial burden of putting forth facts that suggest that he was acting within the scope of his discretionary authority." *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 568 (6th Cir. 2013).

Here, Defendants cite much of the caselaw above regarding academic versus disciplinary dismissals, the facts as alleged in Plaintiff's Complaint regarding her repeated requests to delay the exam, and the emails attached to Plaintiff's Complaint; they then assert she has not shown it would have been clear to the individual Defendants their actions violated clearly established procedural due process law. *See* Doc. 9, at 26-27. They specifically point out that a hearing is not required for an academic dismissal, and failure to follow internal policy is not in itself a constitutional violation. The Court finds the individual Defendants have thus satisfied their initial burden to properly assert the qualified immunity defense.

Plaintiff does not expressly respond to this argument; in fact, the words "qualified immunity" or "clearly established" do not appear in her brief in opposition. *See* Doc. 10.

For many of the same reasons stated above, the Court finds even if Plaintiff had adequately pled a procedural due process claim, she has not satisfied her burden to show it would have been clear to Worth or Cooper that their actions were "unlawful in the situation [they] confronted." *Saucier*, 533 U.S. at 202. Combining the clearly established law that academic dismissals do not require a hearing, but only notice and a "careful and deliberate" decision with

the clearly established law that failure to conform to University policy is not a constitutional violation, with the allegations of Plaintiff's Complaint asserting she was repeatedly encouraged to take the required exam, and that she had an opportunity to appeal and discuss her ultimate dismissal with Cooper, Plaintiff has not met her burden to show it was objectively unreasonable for Worth and Cooper to believe they had provided Plaintiff with constitutionally sufficient process. Therefore, Worth and Cooper are entitled to qualified immunity on Plaintiff's § 1983 claim for damages.[7]

### CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion to Dismiss (Doc. 9), be and the same hereby is, GRANTED.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

---

7. It is unclear if Plaintiff also seeks injunctive relief from the individual Defendants in their individual capacities. But even if she so intended, the Sixth Circuit has held that "[j]ust as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, i.e., his official capacity." *Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd.*, 150 F. App'x 389, 401 (6th Cir. 2005); *see also Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) (the equitable relief sought by the plaintiff could be "obtained only from the defendants in their official capacities, not as private individuals" because the relief sought from the defendants was for violations of a policy that they carried out in their official capacities); *Kuck v. Danaher*, 2011 WL 4537976, at *25 (D. Conn.) ("Plaintiffs cannot obtain prospective injunctive relief from the Defendants sued in their individual capacities as such Defendants would not have the authority to provide such relief in their individual capacities.").